Original
No. R-94-001

*In re* THE PROPOSED NEW HAMPSHIRE RULES OF CIVIL PROCEDURE
(Petition of the New Hampshire Bar Association)

May 23, 1995

*Martin L. Gross, Jack P. Crisp, Jr., Arpiar G. Saunders, Jr.,* and *Bruce W. Felmly,* orally, in favor of the adoption of the Proposed Rules.

*E. Donald Dufresne, David L. Nixon,* and *Michael R. Callahan,* orally, opposed to the adoption of the Proposed Rules.

BROCK, C.J. The New Hampshire Bar Association (NHBA) has recommended that the supreme court adopt a new system of rules governing civil procedure, the proposed New Hampshire Rules of Civil Procedure (Proposed Rules). After much consideration, we decline to adopt the recommendation.

Part II, article 73-a of the New Hampshire Constitution provides that "[t]he chief justice of the supreme court . . . shall, with the concurrence of a majority of the supreme court justices, make rules governing . . . the practice and procedure to be followed" in all courts in the State. Our supervisory and rulemaking authority over the courts in this State derives primarily from the State Constitution, N.H. CONST. pt. II, art. 73-a, and from the common law. *Boody v. Watson,* 64 N.H. 162, 177, 9 A. 794, 806 (1886) ("When the law commands a thing to be done, it puts in requisition the means of executing its command."); *see State v. LaFrance,* 124 N.H. 171, 179, 471 A.2d 340, 344 (1983) ("[T]he judiciary is in charge of the courtroom. The power . . . is a necessary incident to the exercise of judicial power inherent in the functioning of the court system."); *State v. Wentworth,* 118 N.H. 832, 838, 395 A.2d 858, 862 (1978); *cf.* RSA 490:4 (1983). In the past, we have frequently exercised this authority to adopt and to amend rules and procedures governing the administration of justice in each of our courts. When given, we have appreciated and thoughtfully considered the comments and recommendations of members of the public, the bar, and the Supreme Court Advisory Committee on Rules. *See* SUP. CT. R. 51.

The Advisory Committee Draft of the Proposed Rules that we review today is the product of many years of thoughtful commitment on the part of members of the NHBA and the Supreme Court Advisory Committee on Rules. Several surveys of the NHBA membership have been taken, each reflecting a concern for and interest in reform of the present procedural scheme of New Hampshire civil practice. After lengthy review and consideration by the NHBA Special Committee on Rules of Civil Procedure and the Advisory Committee on Rules, the Advisory Committee Draft of the Proposed Rules were forwarded in 1994 to the NHBA membership, along with our order inviting membership comment.

Having received numerous comments on the Proposed Rules and the desirability of their adoption, *see Appendix, infra,* we ordered that oral arguments be held on March 15, 1995. Martin L. Gross led the group advocating adoption of the Proposed Rules, joined by Jack P. Crisp, Jr., Arpiar G. Saunders, Jr., and Bruce W. Felmly. E. Donald Dufresne led the group arguing in opposition, joined by David L. Nixon and Michael R. Callahan.

■ The proponents of the Proposed Rules bear a significant burden in this matter. They must convince us not only that the Proposed Rules are superior to our present system but also that the benefits of such superiority would outweigh the burdensome effects of a complete overhaul of the system. Our system of rules has been characterized as "idiosyncratic," defying "classification as either code-based or rules-based," and expressing "a liberal philosophy toward

pleading." Oakley & Coon, *The Federal Rules in State Courts: A Survey of State Court Systems of Civil Procedure*, 61 WASH. L. REV. 1367, 1409 (1986). Much progress has been made in recent years, however, to provide for uniform procedure where appropriate among our various courts. We note that the pleading requirements in New Hampshire have been described as "simple and logical and, if followed, [of] great[] assist[ance] in the orderly resolution of dispute[s]." 4 R. WIEBUSCH, NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 211, at 155 (1984).

A dramatic feature of the Proposed Rules concerns our system of pleading: Rules 2 and 3 would eliminate the current distinction between legal and equitable actions and pleading, and would provide for actions of either sort to be commenced via a "complaint." PROPOSED NEW HAMPSHIRE RULES OF CIVIL PROCEDURE 2, 3 (Advisory Committee Draft 1993). Because Proposed Rules 2 and 3 suggest significant changes in our system, we address these proposed changes and our current system of pleading in detail.

Pleadings ask a court to take action. 4 WIEBUSCH, *supra* § 212, at 155. Before taking such action, courts require that pleadings specifically state either facts or claims, or demand identifiable relief. 4 WIEBUSCH, *supra.* The assertions made in pleadings allow courts to explore the law and facts of the particular case and thereby to reach its ultimate issue. T. PLUCKNETT, A CONCISE HISTHORY OF THE COMMON LAW 413 (5th ed. 1956).

Pleading has been regarded as an "art" of sorts at least since the era of Edward III, when pleadings were made orally and were reduced to writing on the "roll" according to the recollection of court clerks: "Pleading was therefore the art of saying things in court in such a way as to produce a particular result on the roll, it being well understood that judgment would be on the basis of the enrolled pleadings. . . ." *Id.* at 405 (footnote omitted). The rules of written pleading followed this era and became more and more rigid as time passed; the rules included restrictions requiring that one plead facts, not evidence, and prohibitions against argumentativeness, surplusage, and duplicity. *Id.* at 410. It was in the seventeenth century that "pleading became so subtle that a special branch of the profession grew up to guard its mysteries from the profane." *Id.* at 405.

During the course of the history of New Hampshire pleading, we have taken several different approaches toward pleading rules. *See generally* Reid, *From Common Sense to Common Law to Charles Doe: The Evolution of Pleading in New Hampshire*, 1 N.H.B.J. 27 (1959) [hereinafter *Common Sense*]. Professor Reid describes these approaches as falling "into three clearly marked historical epochs," *id.*

at 27, the era of common sense, the era of common law, and the era of Doe. *Id.* at 28–40.

During the "common sense" era, which directly followed the American Revolution, New Hampshire lawyers rejected all that was British, especially the rigorous formality of common law pleading. *See id.* at 28. Although most judges of this period did not possess a formal legal education, the well-educated Chief Justice Samuel Livermore best represents them. "[H]e typified the era and even went beyond his more inerudite colleagues in demonstrating his contempt for the rules of pleading, warning his juries against paying too much attention to the niceties of the law to the prejudice of justice." *Id.* (quotation omitted). This contempt for "the niceties of the law" led, perhaps inevitably, to the reforms of the common law era. *Id.* at 30–31.

Under Chief Justice Jeremiah Smith, in New Hampshire "there arose a new order of things, and the practice of law was reduced to a practical science." *Id.* at 31 (quotation omitted). Chief Justice Smith introduced special pleading, which in effect mirrored the common law traditions of England that earlier New Hampshire practitioners so diligently had sought to avoid:

> From the loose, chaotic era of democratic common sense, when law was administered without rules, when procedure was informal, and when the only instructions given to juries [were] to apply justice and equity according to the facts of each litigation, New Hampshire . . . evolved into a rigid and formalistic era of English common law, where uniform rules often determined the issue and the merits of the case were never reached . . . . Lawyers began to think of law, not in terms of broad principles, but as a set of narrow rules by which actions could be commenced or halted.

J. Reid, Chief Justice: The Judicial World of Charles Doe 94 (1967) [hereinafter Chief Justice].

From such a formal, technical system came Chief Justice Charles Doe, about whom Professor Reid observed, "It is doubtful if there was ever a presiding judge in American history who demonstrated less sympathy with legal technicalities and niceties than Doe." *Common Sense, supra* at 34. During Chief Justice Doe's stewardship of this court, particularly after *Stebbins v. Insurance Co.,* 59 N.H. 143, 148–49 (1879), the common law era ended, and one could no longer prevail in an action merely on "a procedural technicality." *Common Sense, supra* at 35; *see McDuffee v. Railroad,* 52 N.H. 430, 459 (1873) ("Our time is too much needed for the consideration of subjects of some importance, to be properly occupied with an unnecessary and barren question of pleading."). The requirement of strict precision in form was thus

relaxed, shifting to a focus on what justice required. *See* CHIEF JUSTICE, *supra,* at 92–108. Chief Justice Doe stated that "judgment, and any necessary process for carrying it into effect, being directed to the ends of justice, cannot be obstructed by imaginary barriers of form." *Walker v. Walker,* 63 N.H. 321, 328 (1885); *see also Lisbon v. Lyman,* 49 N.H. 553, 595 (1870) ("Such methods cannot be allowed to gain ascendency over the law which they were designed to execute. The idea of a court being so fettered by forms . . . that the general principles of the law cannot be administered, is preposterous."). Chief Justice Doe's ideas remain worthy, and they have not diminished in importance in the years since his tenure. *See* Rosenberg, *The Federal Civil Rules After Half a Century,* 36 ME. L. REV. 243, 246 (1984) (commenting on the goal of Federal Rule 61, which orders courts "at every stage of [a] proceeding [to] disregard any error or defect . . . which does not affect the substantial rights of the parties").

Our present system of pleading and procedure is thus the legacy of Chief Justice Doe. Although the practice of law in New Hampshire has changed in the years since his reforms were effected, much of what currently is praiseworthy about our practice derives from his ideals. We retain his recognition of the "intimate relation between procedure and justice." A. VANDERBILT, CASES AND OTHER MATERIALS ON MODERN PROCEDURE AND JUDICIAL ADMINISTRATION 19 (1952). For instance, our modern rules of pleading incorporate a liberal doctrine of amendment, which was originated by Chief Justice Doe. *Compare ERG, Inc. v. Barnes,* 137 N.H. 186, 189, 624 A.2d 555, 557 (1993) ("To assure that the opportunity for amendment [of one's pleadings] has practical meaning . . . the plaintiff must be given leave to amend the writ to correct perceived deficiencies before an adverse judgment has preclusive effect.") *with Stebbins,* 59 N.H. at 145–49 (New Hampshire courts may "allow any amendment [of writs] called for by the necessities and justice of the case, whether it be of form or substance, and in whatever stage of the proceedings it may be asked for" so long as "the rights of parties will not be prejudiced, and that the speedy and economical administration of justice will be promoted."); *see also* RSA 508:10 (1983). It still is practically impossible to lose an action because of a "procedural technicality." *Compare Foster v. Bedell,* 136 N.H. 728, 730, 621 A.2d 936, 938, *cert. denied,* 114 S. Ct. 133 (1993) (a dismissal resulting from a party's failure to comply with a court order on the filing of pretrial statements is a judgment on the merits and precludes resort to the saving statute, RSA 508:10) *with Barton v. Barton,* 125 N.H. 433, 435, 480 A.2d 199, 200 (1984) ("[A] default, by definition, is a failure to take a step required by the rules of procedure" and results in a dismissal on the merits.). We distinguish between "purely procedural" dismissals, which do not bar subsequent actions, and those

dismissals which are "procedural," but rest also on a substantive decision on the merits of the case, which do bar subsequent actions. *E.g., ERG, Inc.,* 137 N.H. at 189, 624 A.2d at 557.

We agree with Attorney Joseph A. Millimet, who filed a comment reminiscent of Chief Justice Doe regarding the adoption of the Proposed Rules, that one can "long for the days when the only rule of procedure was whatever justice and convenience required . . . ." *See* Parsons, *The President's Address,* 3 PROCEEDINGS OF THE NEW HAMPSHIRE BAR ASSOCIATION 209, 212 (1912–13) (commending the pleading and procedural reforms of Chief Justice Doe and Chief Justice Samuel D. Bell, and stating that "[a]s long as our procedure remains what justice requires, the only improvement will come from a better knowledge of what justice is").

It has been stated that

> "the law may be weakened by too much intellectualism as well as by too little knowledge." The thought was, of course, that we may spin out our rules to such fineness that they cease to be practical, or that we may forget the serious problems confronting life about us which call for our solution. As satisfactory as it may be to enlarge upon the philosophy of the law or the beauty of any system, both should be discarded in daily practice, if they fail to bring results or cease to work.

Crane, *The Spirit of the Common Law,* in THE FUTURE OF THE COMMON LAW 242, 243 (P. Smith ed., 1965) (quoting the remarks of former Chief Judge Edgar M. Cullen of the New York Court of Appeals). We are not convinced that our present system has failed to bring results or has ceased to work.

The proponents of the Proposed Rules are correct in asserting that the present procedural system imposes a burden on New Hampshire practitioners, especially those who are just beginning their practices. We consider any burden to be a reasonable one, however, and we are not convinced that a full revision of our pleading and procedural systems will make the process any more simple for new lawyers. We agree with Professor Subrin, who found it difficult to understand "how the proponents of uniform rules thought they could reduce procedural problems just by changing the rules. . . . We can not ignore the importance of a settled and fair procedure. Stability, even in procedure, is highly desirable. It is a maxim that nothing is worse than variable and uncertain law." Subrin, *Federal Rules, Local Rule, and State Rule: Uniformity, Divergence, and Emerging Procedural Patterns,* 137 U. PA. L. REV. 1999, 2010–11 (1989) (ellipsis and quotation omitted).

Joining those jurisdictions that have adopted pleading and procedural schemes closely modeled on the Federal Rules would, we

believe, give us "variable and uncertain law." *Id.* We cannot agree with the proponents of the Proposed Rules that adoption of the new system effects merely a structural change, with minor substantive revision, and that no increase in procedural litigation is likely to follow such an adoption. To prove the point, we need look no further than one of the myriad rules proposed—the almost identical provisions of the Federal and Proposed Rule 11.

Superior Court Rule 59 and District and Municipal Court Rule 1.8(F) currently govern the conduct described in Proposed Rule 11. Rules 59 and 1.8(F) provide in identical language that the superior or district or municipal court "may assess reasonable costs, including reasonable counsel fees, against any party whose frivolous or unreasonable conduct makes necessary the filing of or hearing on any motion." SUPER. CT. R. 59; DIST. & MUN. CT. R. 1.8(F). These rules have been construed flexibly to authorize the imposition of such sanctions "as justice may require." *Wright v. Wright,* 119 N.H. 102, 104, 398 A.2d 837, 838 (1979) (quotation omitted). Proposed Rule 11, on the other hand, provides for sanctions if the signer of a filed document violates the rule's mandate, pursuant to which the attorney's signature

> constitutes a certificate that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

PROPOSED NEW HAMPSHIRE RULES OF CIVIL PROCEDURE 11 (Advisory Committee Draft 1993). The commentary to this Rule in the Advisory Committee Draft first states that "prior New Hampshire law was consistent with this rule." *Id.* comment at 27. The Advisory Committee notes, however, that while the Proposed Rule continues the requirements of several existing Superior Court Rules, including Rule 59, it "also contains the current federal language which places an affirmative duty upon the attorney or party signing the pleading to conduct a reasonable prefiling inquiry into both the facts and the law." *Id.* advisory committee's note.

We need not and do not consider today whether Rule 11 would expand or limit the types of conduct for which sanctions may be imposed; all we need note are the plethora of topics about which parties in federal court have litigated under Federal Rule 11.

> [T]here is a conflict between or among circuits on practically every important question of interpretation and policy under [Federal Rule 11], from the content of the duties imposed on a person who signs a paper filed in district court, to the procedural rights of those who may be sanctioned, the persons or entities on whom sanctions may be imposed, the standard(s) of appellate review, and even to whether sanctions are in fact mandatory for a violation.

Burbank, *The Transformation of American Civil Procedure: The Example of Rule 11,* 137 U. PA. L. REV. 1925, 1930 (1989) (footnotes omitted). In our view, the liberal interpretation we have given to the "frivolous or unreasonable conduct" standard in Superior Court Rule 59 and District and Municipal Court Rule 1.8(F) makes more sense, and gives the trial court the discretion necessary adequately to resolve any question that might arise. As stated by Attorney James A. Connor, although "there are many worthwhile portions of the propos[ed rules], there is enough ambiguity in the new rules to encourage years of appeals."

"The fundamental precept of rulemaking always ought be that no rule shall be altered unless there is *substantial* need for the change." Frank, *The Rules of Civil Procedure—Agenda for Reform,* 137 U. PA. L. REV. 1883, 1885 (1989) (emphasis added). While there may be flaws in individual components of the existing system, it does not necessarily follow that the entire system is too flawed to be maintained. Perhaps the most compelling reason for declining to adopt the Proposed Rules may be stated colloquially: "'If it ain't broke, don't fix it.'" *In re Amendment to Florida Rules,* 563 So. 2d 85, 85 n.1 (1990). We readily acknowledge that there are aspects of the present system that might warrant review or amendment. We do not think, however, that a complete overhaul is indicated. If changes are necessary, they may be effected by amendments to individual rules, rather than by wholesale revision.

One consistent complaint regarding the present amalgam of rules and statutory provisions is the difficulty that a *pro se* litigant or new practitioner faces when approaching New Hampshire litigation. We do not see how the Proposed Rules alleviate this difficulty in the hands of a *pro se* litigant, except for the ease with which the provisions may be transported. The elements of Proposed Rule 11, for example, would likely engender far more trepidation than the elements of Superior Court Rule 59 currently do.

The concern expressed in behalf of new members of the bar is not a new one. More than fifty years ago, the president of the NHBA stated: "It is a tradition of our bar that its older members welcome the youngsters, that we give them encouragement, and that we render

them all proper assistance." Cheney, *President's Address,* 7 PROCEEDINGS OF THE NEW HAMPSHIRE BAR ASSOCIATION 65, 67 (1938). We still pride ourselves on the collegiality and cooperation of our bar and the willingness of its members to assist newcomers. *See, e.g., Bridging the Gap: NHBA Services for New Members,* NEW HAMPSHIRE BAR NEWS, Feb. 1, 1995, at 6 (describing the New Lawyer's Linking Program, which "offers new attorneys the opportunity to work with an experienced mentor"); Crisp, President's Perspective, Professional Growth, Integrity and Collegiality: Mid-Winter Themes, NEW HAMPSHIRE BAR NEWS, Jan. 18, 1995, at 1, 1–2 (referring to the opportunity "to enjoy the collegiality that has been a hallmark of our Bar"). The current system may be unwieldy in some respects; any perceived need for change, however, may be addressed either by a reorganization of provisions or by amendment, rather than their wholesale displacement.

■ Accordingly, we decline the recommendation of the New Hampshire Bar Association that we adopt the proposed New Hampshire Rules of Civil Procedure.

*So ordered.*

THAYER, J., dissented; the others concurred.

THAYER, J., dissenting: I dissent from the majority's decision not to adopt the proposed New Hampshire Rules of Civil Procedure (Proposed Rules).

Over thirteen years ago, the New Hampshire Bar Association formed the Special Committee on Rules of Civil Procedure (Special Committee) to study the possibility of adopting a comprehensive set of rules of civil procedure for the State of New Hampshire. After many years of intense study and review, the Special Committee drafted the Proposed Rules and recommended their adoption to the supreme court, which referred the question to the advisory committee on rules (Advisory Committee). After exhaustive deliberations, the Advisory Committee also recommended, without apparent dissent, the adoption of the Proposed Rules.

In my opinion, one of the strongest arguments made by the proponents of the Proposed Rules is that we currently lack a single definitive and comprehensive compilation of procedural rules. Instead, our procedural rules are a patchwork of court rules and judicial decisions that have evolved into a trap for the unwary practitioner. Lawsuits have been dismissed based on procedural defects and lost prior to a consideration of their merit. In my view, the effective administration of justice and basic fairness will be enhanced if the rules of the superior, district and municipal courts are easily accessible to the legal practitioner and the *pro se* litigant. Accordingly, I would follow the

recommendations of the Advisory Committee, the New Hampshire Bar Association, and the New Hampshire Trial Lawyers Association, and adopt the Proposed Rules. The Rules should be adopted, effective one year from this date, allowing the rules committee time to effect the Rules changes that all parties agree must be made.

## Appendix

We thank the following individuals and organizations for filing comments with the supreme court regarding these proposed rules:
*Business & Industry Association of New Hampshire* (John D. Crosier); *Franklin Pierce Law Center Civil Practice Clinic* (Bruce E. Friedman, Esq.); *Franklin Pierce Law Center Faculty* (Arpiar Saunders, Jr., Esq.); *New Hampshire Bar Association* (Jack P. Crisp, Jr., Esq.); *New Hampshire District and Municipal Courts* (Hon. Edwin W. Kelly, Administrative Justice); *New Hampshire Legal Assistance* (Abigail Turner, Esq. and Elliott Berry, Esq.); *New Hampshire Municipal Association* (H. Bernard Waugh, Jr., Esq.); *New Hampshire Probate Court* (Hon. John R. Maher, Administrative Justice); *New Hampshire Superior Court* (Hon. Joseph P. Nadeau, Chief Justice); *New Hampshire Superior Court ADR Committee* (Peter Y. Wolfe, Esq.); *New Hampshire Trial Lawyers Association* (A.G. O'Neil, Jr., Esq.); *Peabody & Brown* (Kevin M. Fitzgerald, Esq.); Peter D. Anderson, Esq.; Patti Blanchette, Esq.; Stephen E. Borofsky, Esq.; Richard P. Bosa; John T. Broderick, Jr., Esq.; Gary T. Brooks, Esq.; Stephen C. Brown, Esq.; Michael R. Callahan, Esq.; Susan B. Carbon, Esq.; James M. Carroll, Esq.; Joseph Caulfield, Esq.; Elizabeth Cazden, Esq.; Robert Christy, Esq.; James A. Connor, Esq.; Martha W. Copithorne, Esq.; Charles F. Dalton, Jr., Esq.; Claudia C. Damon, Esq.; E. Donald Dufresne, Esq.; Bruce W. Felmly, Esq.; Richard E. Galway, Esq.; Martin L. Gross, Esq.; Fred W. Hall, Jr., Esq.; Michael P. Hall, Esq.; James S. Harrington, Esq.; Honey Hastings, Esq.; Ralph F. Holmes, Esq.; John P. Kalled, Esq.; Joseph M. Kerrigan, Esq.; Bradley M. Lown, Esq.; Joseph M. McDonough, III, Esq.; Joseph F. McDowell, III, Esq.; W. John McNally, III, Esq.; Jon Meyer, Esq.; Jack B. Middleton, Esq.; Joseph A. Millimet, Esq.; Arthur H. Nighswander, Esq.; David L. Nixon, Esq.; Fred L. Potter, Esq.; Clifford J. Ross, Esq.; L. Jonathan Ross, Esq.; Gregory H. Smith, Esq.; Gordon B. Snyder, Esq.; Stephen L. Tober, Esq.; Geoffrey Judd Vitt, Esq.; Vincent A. Wenners, Jr., Esq.; W.E. Whittington, IV, Esq.; James M. Winston, Esq.; Suzanne M. Woodland, Esq.