Rockingham
No. 95-348

# Dennis S. Roberts

## v.

# General Motors Corporation

March 12, 1996

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Robert E. Murphy, Jr.* and *Peter R. Chiesa* on the brief, and *Mr. Murphy* orally), for the plaintiff.

*Bingham, Dana & Gould*, of Boston, Massachusetts (*Daniel L. Goldberg* and *Alicia L. Downey* on the brief, and *Mr. Goldberg* orally), for the defendant.

BROCK, C.J. The issue in this interlocutory appeal is whether a plaintiff may rely upon the statute of limitations saving statute, RSA 508:10 (1983), more than once, when judgment is rendered against the plaintiff and his right of action is not barred by the prior judgment. We hold that he may. Accordingly, we affirm the trial court's denial of the defendant's motion to dismiss on statute of limitations grounds, and remand.

The plaintiff, Dennis S. Roberts, originally filed suit in 1988 against the defendant, General Motors Corporation (GM), asserting multiple claims based on GM's decision in 1987 not to award the plaintiff a Chevrolet dealership. The defendant never argued that the original suit failed to comply with the statute of limitations. In 1992, after the trial court granted GM's motion for summary judgment on all but the claim for breach of the duty of good faith and fair dealing, Roberts followed the suggestion of the trial judge and accepted a voluntary nonsuit on that remaining claim while he pursued an appeal of the claims on which summary judgment had been entered against him. On October 12, 1993, within the one year permitted by RSA 508:10, Roberts executed and served a second writ. However, he never filed that writ with the court. Over one year later, after this court affirmed the grant of partial summary judgment against him, *Roberts v. General Motors Corp.*, 138 N.H. 532, 643 A.2d 956 (1994) (*Roberts I*), the plaintiff filed a motion for leave for late entry of the second writ. The trial court denied the motion, finding no accident, mistake, or misfortune to excuse the failure to file.

Relying on RSA 508:10 for a second time, Roberts brought and filed a third suit on January 24, 1995, alleging the same claim for breach of the duty of good faith and fair dealing. The defendant moved to dismiss, arguing that both the original limitations period and the grace period allowed under the saving statute had expired; GM argued that the plaintiff had no right to invoke the saving statute a second time. Ruling that successive invocation of RSA 508:10 is permissible, depending on the facts of a particular case, the Superior Court (*McHugh*, J.) denied GM's motion "[b]ased on all of the procedural facts and circumstances which this case presents." GM then filed this interlocutory appeal. *See* SUP. CT. R. 8.

The saving statute provides as follows:

Second suit. If judgment is rendered against the plaintiff in an action brought within the time limited therefor, or upon a writ of error thereon, and the right of action is not barred by the judgment, a new action may be brought thereon in one year after the judgment.

RSA 508:10. The saving statute is "designed to insure a diligent suitor the right to a hearing in court until he reaches a judgment on the merits." *Berg v. Kelley,* 134 N.H. 255, 257, 590 A.2d 621, 622 (1991) (quotation omitted). Its broad and liberal purpose "is not to be frittered away by any narrow construction." *Id.* (quotation omitted). "The statute benefits suitors who are compelled to abandon their present action, whether by their own act or the act of the court, when either would leave them with a cause of action, yet undetermined." *Id.* (quotation omitted).

The test was well articulated recently in *Berg*:

Essentially, RSA 508:10 serves to permit an action to be brought after the general limitation has run (RSA 508:4), where a prior action, seasonably brought, should be dismissed for reasons not barring the right of action or determining it upon its merits. The test of RSA 508:10 is whether the right of action is, or is not, barred by the first judgment.

*Id.* (quotations and brackets omitted). This is the sole test. *Barton v. Barton,* 125 N.H. 433, 434, 480 A.2d 199, 200 (1984).

█ The test is plainly *not* whether the prior judgment of dismissal was based on any mistake committed by the plaintiff or his counsel: "A party is protected although the technical judgment against him may be due to his own carelessness or fault." *Milford Quarry &c. Co. v. Railroad,* 78 N.H. 176, 178, 97 A. 982, 983 (1916) (quotation omitted). This court in *Milford Quarry* rejected a claim, as the defendant makes here, that the plaintiff's fault "in getting into a situation where [he was] obliged or thought it wise to take a voluntary nonsuit, debars [him] from the new action." *Id.* In *Brady v. Duran,* 119 N.H. 467, 403 A.2d 416 (1979), we permitted the plaintiff to pursue a new writ under the saving statute, even though we had previously upheld the trial court's denial of a motion for late entry of a writ which, similar to the instant case, was based upon the "inexcusable neglect" of the plaintiff's attorney. *Brady v. Duran,* 117 N.H. 275, 277, 372 A.2d 283, 285 (1977); *see also Carveth v. Latham,* 110 N.H. 232, 234, 265 A.2d 1, 2-3 (1970) (dismissal for

failure to prosecute is not adjudication on the merits for purposes of RSA 508:10).

Thus, the "diligent suitor" whom the saving statute seeks to protect, *see Berg*, 134 N.H. at 257, 590 A.2d at 622, is the plaintiff who has not slept on his rights; it does not require diligence in the sense of never making mistakes — even "inexcusable" mistakes — in lawyering. Indeed, the purpose of the statute of limitations itself "is to insure that defendants receive timely *notice* of actions against them." *Dupuis v. Smith Properties, Inc.*, 114 N.H. 625, 629, 325 A.2d 781, 783 (1974) (emphasis added). Here, as in *Dupuis*, the defendant was on notice of the charges against it from the day the original suit was filed. GM knew it needed to preserve its evidence and marshal its witnesses. Nor did it ever have reason to believe the plaintiff was dropping the action, as might occur in cases of failure to prosecute. *Cf. Carveth*, 110 N.H. at 234, 265 A.2d at 2-3 (even where action is dismissed for plaintiff's failure to prosecute, the saving statute gives plaintiff an opportunity to file a second lawsuit). This action was virtually always on the active docket.

The ultimate question in this case is what RSA 508:10 means by the phrase "the time limited therefor." GM asks us to hold that it means the time originally set in the statute of limitations for filing the first writ. The plaintiff's brief does not directly address this question but implies that it merely means the writ was not untimely, taking into account all applicable legal provisions. We agree with the latter interpretation. We examine statutes not in isolation, but in the context of the overall statutory scheme. *Opinion of the Justices (Solid Waste Disposal)*, 135 N.H. 543, 545, 608 A.2d 870, 872 (1992). "[A]ll statutes upon the same subject-matter are to be considered in interpreting any one of them." *Barksdale v. Town of Epsom*, 136 N.H. 511, 515-16, 618 A.2d 814, 817 (1992) (quotation omitted). Thus, in construing RSA 508:10, we determine "the time limited" for any action after considering all applicable statutes and rules. In addition, when construing the meaning of a statute, "where possible, we ascribe the plain and ordinary meanings to words used." *Appeal of Astro Spectacular*, 138 N.H. 298, 300, 639 A.2d 249, 250 (1994) (quotation omitted).

■■ On its face, RSA 508:10 does not contain any circumscribing language that might require a court to interpret "the time limited therefor" as referring to timeliness under only one statute, the statute of limitations. On the contrary, if the saving statute properly saved a second writ, then that writ has been timely initiated; the second action has been brought "within the time limited" for it, under the plain meaning of the statutory words.

Moreover, the statute speaks of "*an action* brought within the time limited therefor." The phrase "time limited therefor" thus modifies "an action." An action is a lawsuit, not a cause of action or a legal claim. *See MBC, Inc. v. Engel*, 119 N.H. 8, 11, 397 A.2d 636, 638 (1979). Here, the second writ initiated an action, which was brought within the time permitted for it by law: in this case, RSA 508:10 gave Roberts one year from the prior nonsuit to initiate his second action. If the legislature had intended to limit RSA 508:10 to only one application, it could have stated such an intention clearly, as has been done in other States. *See* Tenn. Stat. Ann. § 28-1-105 (Supp. 1995).

■ GM argues that this interpretation will lead to actions being brought, dismissed, and saved under the saving statute, over and over, ad infinitum. We reject this argument, as we rejected a similar slippery slope argument in *Desaulnier v. Manchester School District*, 140 N.H. 336, 339–40, 667 A.2d 1380, 1382 (1995). The trial court has ample authority to guarantee that such abuses do not occur. The court can, for example, deny a plaintiff's motion for voluntary nonsuit *without* prejudice; the court has discretion to grant a nonsuit only *with* prejudice, if it would be "manifestly unjust" to the defendant to grant plaintiff's request. *Total Service, Inc. v. Promotional Printers, Inc.*, 129 N.H. 266, 268, 525 A.2d 273, 275 (1987) (quotation omitted). The court might so decide if the plaintiff, by his act or agreement, has pursued the suit or committed himself to such an extent that a nonsuit would be unfair to the defendant, *see id.* at 268-69, 525 A.2d at 275-76; 5 R. WIEBUSCH, NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE §§ 1069, 1071, 1075 (1984). The court also has the power to dismiss an action with prejudice where the plaintiff has not complied with court rules. 5 WIEBUSCH, *supra* § 1416 (Supp. 1994); *Foster v. Bedell*, 136 N.H. 728, 730, 621 A.2d 936, 938, *cert. denied*, 114 S. Ct. 133 (1993). The trial court's discretion in dismissing cases with or without prejudice, or in denying a plaintiff's motion for voluntary nonsuit, is sufficient to prevent an infinitude of successive actions being filed.

■ Here, the successive suits were not brought for purposes of hindrance or delay, or otherwise to gain a strategic advantage for the plaintiff. Nor was GM prejudiced by the lapse of time or otherwise. Roberts' initial action was timely in the first instance and has been under litigation ever since. GM has been on notice of the allegations against it, and of its need to secure and preserve evidence to prepare its defense. The total amount of time that has transpired between initial writ and the potential retrial is compa-

rable to that in many other lawsuits: if we had reversed in *Roberts I*, the retrial would have taken place some time after June 1994, which was only seven months before the writ which GM is now asking us to order dismissed as stale. Indeed, it was our affirmance in *Roberts I* that triggered the scheduling conference where plaintiff's counsel realized he had failed to file the writ. Thus, the bulk of the alleged staleness in this case appears to have resulted from ordinary pretrial activities (discovery and cross-motions for summary judgment) and the initial appeal process, *not* from Roberts' attempt to use the saving statute twice for two different reasons.

■ Even the defendant concedes that the policy of the saving statute would allow a new writ after each of the dismissals separately. GM simply argues that the two applications of the saving statute may not be joined together. We disagree. If each application of the saving statute was fair, reasonable, and thus appropriate under the plain meaning of the statute, we see no reason to read into the statute a one-use limitation that the legislature has not enacted.

GM argues that, even if we reject its argument that a plaintiff should *never* be able to use RSA 508:10 a second time, we should adopt a standard for when RSA 508:10 may be applied that is at least as exacting as the standard for granting a motion for late filing of the writ, *i.e.*, "accident, mistake, or misfortune." We disagree. If GM were correct on this point, then there would be no need for the saving statute at all: if the trial court had found "accident, mistake, or misfortune," it would presumably have granted the motion for late filing of the writ. *Cf. Brady*, 117 N.H. at 276, 372 A.2d at 285. The saving statute would never come into play unless the court had previously found *no* ground for late filing and dismissed the action.

■ GM has cited a number of cases in other States refusing to allow a second application of the saving statute. *But see Trull v. Seaboard Air Line Ry.*, 66 S.E. 586 (N.C. 1909) (permitting multiple applications of the saving statute). As noted by Roberts at oral argument, however, our statute does not clearly indicate a legislative intent to permit only one application of the saving statute, the way some other state statutes do. *See, e.g.*, Ga. Code Ann. § 9-2-6 (Supp. 1995) ("[I]f the dismissal or discontinuance occurs after the expiration of the applicable period of limitation, this privilege of renewal shall be exercised only once."); Tenn. Code Ann. § 28-1-105 (instead of the New Hampshire language, "time limited therefor," the Tennessee saving statute saves an action "commenced within the time limited by rule or statute of limitations").

More importantly, however, our State has a different legal tradition than other States, even those States whose saving statutes

are not very different than our own. Since the days of Chief Justice Doe in the late nineteenth century, New Hampshire procedure has focused on "what justice require[s]," not on "strict precision in form." *In re Proposed Rules of Civil Procedure*, 139 N.H. 512, 515-16, 659 A.2d 420, 422 (1995). That is why we make every effort to reach a judgment on the merits, to achieve the ends of justice unobstructed by imaginary barriers of form. *Id.* at 516, 659 A.2d at 422; *Walker v. Walker*, 63 N.H. 321, 328 (1885).

In the instant case, we will continue to focus on "what justice requires" and not mere "form." We will apply our saving statute "to insure a diligent suitor the right to a hearing in court until he reaches a judgment on the merits," *Berg*, 134 N.H. at 257, 590 A.2d at 622 (quotation omitted), despite the formal error of plaintiff's counsel.

*Affirmed and remanded.*

JOHNSON and BRODERICK, JJ., did not sit; HORTON, J., concurred; THAYER, J., dissented.

THAYER, J., dissenting: I respectfully dissent from the majority opinion. I would hold that the defendant's third action was time barred and would reverse the trial court's denial of the defendant's motion to dismiss.

This case presents a question of first impression concerning the application of New Hampshire's saving statute. *See* RSA 508:10 (1983). The statute simply states:

> Second Suit. If judgment is rendered against the plaintiff in an action brought within the time limited therefor, or upon a writ of error thereon, and the right of action is not barred by the judgment, a new action may be brought thereon in one year after the judgment.

*Id.*

In prior cases, plaintiffs have invoked RSA 508:10 in an effort to save second suits that were brought within one year of a judgment in the original actions. *See, e.g., Barton v. Barton*, 125 N.H. 433, 433-34, 480 A.2d 199, 200 (1984). This case is different. In this case, the plaintiff is trying to bring a third lawsuit more than two years after he accepted a voluntary nonsuit of his original action. The majority ignores this two-year delay. It holds that because the plaintiff filed a second action within one year of the voluntary nonsuit, and a third action within one year of the dismissal of his second action, he satisfied the terms of the saving statute. In the majority's view, plaintiffs can invoke RSA 508:10 more than once to

acquire additional one-year grace periods in which to file new actions.

I disagree with that portion of the majority's opinion. "We will interpret a statute, when possible, in a manner consistent with its plain meaning," taking into account its relation "to the overall statutory scheme." *Opinion of the Justices (Solid Waste Disposal)*, 135 N.H. 543, 545, 608 A.2d 870, 872 (1992). By its plain language, RSA 508:10 allows plaintiffs to bring a new action "within one year" of a judgment in an action filed within the "time limited therefor." In my view, the phrase "time limited therefor" refers to the time limits imposed by the statutes of limitations. Indeed, the title of RSA chapter 508 is "Limitation of Actions" and it contains a series of limitation provisions. *See, e.g.*, RSA 508:2 (limiting real actions to twenty years); RSA 508:4 (limiting personal actions to three years). Therefore, the saving statute gives plaintiffs one year to bring a new action following a judgment in an action filed within the applicable statute of limitations. By linking the grace period to actions filed within the limitations period, the saving statute gives plaintiffs only a single one-year period to refile an action.

To the extent that the majority, by its contrary ruling, identifies an ambiguity in the language of the statute, the history of RSA 508:10 confirms that it was intended to provide only a single one-year grace period. *Cf. Snyder v. N.H. Savings Bank*, 134 N.H. 32, 35, 592 A.2d 506, 508 (1991) (when "the statutory language is ambiguous, we turn to the statute's legislative history for interpretive guidance"). The legislature passed the original version of the saving statute in 1791. *See Milford Quarry &c. Co. v. Railroad*, 78 N.H. 176, 177, 97 A. 982, 983 (1916). Then, in 1842, the statute was revised to resemble its current form. The saving clause was placed at the end of a list of statutes of limitations, *see generally* RS 181:1-:10 (1842), and provided:

> If judgment shall be rendered against the plaintiff, in any action commenced within the times before limited, or upon any writ of error brought thereon, he may commence a new action thereon within one year thereafter, in case his right of action is not barred by such judgment.

RS 181:10.

The placement of the saving clause is important because it reveals what the legislature meant by the phrase "times before limited." In my view, the legislature was referring to the statutes of limitations listed in the preceding sections of RS chapter 181. Therefore, in enacting the saving statute, the legislature intended to give plaintiffs who suffered adverse judgments in actions *filed within the*

*statute of limitations period* one year in which to bring a new suit, provided that the judgment did not prevent it. By anchoring the grace period to actions filed within the applicable statute of limitations, the legislature limited plaintiffs to a single one-year period in which to refile an action.

Nothing in the subsequent history of the saving statute persuades me that the legislature ever intended to change its meaning. In 1867, the legislature adopted the current version of the saving statute, substituting the phrase "the time limited therefor" for the phrase "times before limited." GS 202:9 (1867). The change was "verbal, apparently made to satisfy the literary taste of the revisers of 1867." *Milford Quarry*, 78 N.H. at 177, 97 A. at 983. Importantly, the placement of the saving statute did not change — it remained at the end of a list of statutes of limitations. *See generally* GS 202:1-:10 (1867). As a result, the new language also referred to the time limits in the preceding sections of the chapter. Accordingly, the legislature continued to view the statute as "saving" only those actions brought within one year of a judgment in a lawsuit filed within the applicable statute of limitations.

In this case, the plaintiff's third writ did not satisfy the requirements of RSA 508:10. The plaintiff filed the writ within one year of the dismissal of an action brought pursuant to the saving statute — not an action filed within the period established by the statute of limitations. In light of the legislative history outlined above, I would hold that the third action was time barred.

There are additional reasons to believe that RSA 508:10 creates only a single one-year grace period. First, with the exception of North Carolina, every other court that has considered the issue before us has concluded that saving statutes do not give plaintiffs successive grace periods in which to file new actions. *See Estate of Pintavalle v. Valkanos*, 581 A.2d 1050, 1051-52 (Conn. 1990); *Smith v. Chicago Transit Authority*, 385 N.E.2d 62, 63 (Ill. App. Ct. 1978); *Denton v. City of Atchison*, 90 P. 764, 765 (Kan. 1907); *Cady v. Harlan*, 442 S.W.2d 517, 519 (Mo. 1969); *Hull v. Rich*, 854 P.2d 903, 904 (Okla. 1993); *Turner v. N.C. & St. L. Railway*, 285 S.W.2d 122, 123-24 (Tenn. 1955). The majority dismisses these cases by suggesting that they involve statutes with more explicit language than RSA 508:10. In fact, however, States with saving statutes similar to our own also limit plaintiffs to a single one-year grace period. *See, e.g., Hull*, 854 P.2d at 904 (Okla. Stat. tit. 12, § 100 (1991) provides that "[i]f any action is commenced within due time," only to be dismissed for a reason other than the merits, the plaintiff may commence a new action within one year). The majority makes no effort to distinguish these cases.

Second, the majority's approach threatens to create endless litigation. If plaintiffs can rely upon RSA 508:10 to acquire successive one-year grace periods, then they can continue litigation indefinitely by filing a suit, obtaining a voluntary nonsuit, and then refiling within a year of the nonsuit. This potential for endless litigation undermines our tradition — preserved through statutes of limitations — of giving defendants notice of when a cause of action will expire. "There comes a time when the defendant ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations." *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 169, 371 A.2d 170, 173-74 (1977) (brackets and quotations omitted). In my view, the legislature has decided that defendants should know that a lawsuit can be filed against them only during the statute of limitations period and, when appropriate, up to one year after a case so filed has been dismissed. After that, no new actions may be brought.

The majority argues that trial courts will prevent endless litigation by dismissing cases with prejudice when it would be unfair to allow a plaintiff to refile under RSA 508:10. At the time a trial court is called upon to dismiss a case, however, it might not even have before it the issue of prejudice. In addition, the court does not know whether a new action will be brought under RSA 508:10 and, if it is, whether it would be unfair to the defendant. Subsequent circumstances could create real hardship that was not considered at the time of the dismissal. I believe the legislature recognized these problems and chose to limit new actions to a single one-year period following the dismissal of an original action.

To justify its holding, the majority invokes New Hampshire's history of reaching the merits of a case "unobstructed by imaginary barriers of form." *In re Proposed Rules of Civil Procedure*, 139 N.H. 512, 516, 659 A.2d 420, 422 (1995) (quotation omitted). It suggests that its broad interpretation of RSA 508:10 — permitting potentially endless litigation until a case is decided on the merits — is necessary to preserve this tradition.

The majority cites Chief Justice Doe as the source of New Hampshire's aversion to "barriers of form." But a review of Chief Justice Doe's teachings indicates that his principal concern in this area involved the complex common law pleading forms which existed in New Hampshire in the early 1800s. *See, e.g.*, J. REID, CHIEF JUSTICE: THE JUDICIAL WORLD OF CHARLES DOE 95-96 (1967). It was those forms that he viewed as intolerable "barriers" because they confused litigants and interfered with justice. *Id.* at 96. Contrary to the majority's suggestion, there is no evidence that

Chief Justice Doe would have objected to a limited reading of the saving statute. Limiting the saving statute to a single one-year grace period preserves important goals underlying the State's statutes of limitations — promoting an end to litigation and setting a time for the initiation of existing claims. *Cf. Eli Lilly & Co.*, 117 N.H. at 169-70, 371 A.2d at 173-74. It has nothing to do with the injustice of New Hampshire's ancient pleading forms.

For the reasons discussed above, I respectfully dissent.