**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**


**In Case No. 2024-0189, <u>John Hermens & a. v. Textiles Coated Incorporated d/b/a Textiles Coated International</u>, the court on May 30, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(3). The Superior Court (<u>Messer</u>, J.) has transferred one interlocutory appeal question asking whether the final resolution of a class action lawsuit seeking medical monitoring damages brought by the plaintiffs, John Hermens and Brenda Hermens, against the defendant, Textiles Coated Incorporated d/b/a Textiles Coated International (TCI), bars this lawsuit seeking property damages. <u>See</u> <u>Sup. Ct. R.</u> 8(1). We answer the question in the negative.

I.      Background

We accept the statement of the facts as presented in the interlocutory appeal statement and rely upon the record for additional facts as necessary. On July 21, 2017, the plaintiffs simultaneously filed two suits against TCI: a Class Action Complaint for Medical Monitoring (medical monitoring case) and a Class Action Complaint for Damage to Property Interests (property interest case). Each complaint alleged that TCI used products containing ammonium perfluorooctanoate (APFO) at its manufacturing facility in Amherst which led to the emission of perfluorooctanoic acid (PFOA) that contaminated household water in the plaintiffs' private well. Each complaint alleged trespass, nuisance, negligence, and negligent failure to warn.

The medical monitoring complaint alleged that, as a result of having been exposed to toxic substances "in the air, groundwater and soil, and household water," the "Plaintiffs and Class Members have been exposed to toxic substances and suffered a significant increased risk of illness, disease or disease process as a result of that exposure." The plaintiffs sought the cost of a medical monitoring program aimed at detecting disease caused by the alleged exposure to PFOA. The property interest complaint alleged that due to TCI's conduct "and the resulting contamination, the value and marketability of the property and property rights of the Plaintiffs and members of the Class have been and will continue to be diminished." The plaintiffs sought damages for the cost of remediation and mitigation, as well as for annoyance and discomfort, loss of use and enjoyment, and diminution in property value.

In October 2017, TCI moved to dismiss the medical monitoring case for failure to state a claim upon which relief could be granted. TCI argued that, because the plaintiffs did not allege that they presently suffer from "illness or any adverse symptom or reaction," they cannot sue in New Hampshire for tort in the absence of an injury. In March 2018, the Superior Court (Brown, J.) denied TCI's motion, finding persuasive cases from other jurisdictions that allow claims for medical monitoring without the existence of present physical harm. The court subsequently denied TCI's motion for an interlocutory appeal of its ruling.

At a hearing in July 2018, the trial court agreed to consolidate the two cases for discovery purposes but noted that, if the "issue of joinder" became "ripe at some point," either party could make a motion to bifurcate the cases. In 2019, following a consolidated hearing, the Superior Court (Brown, J.) granted class certification for both cases, with different class definitions for each. See Super. Ct. R. 16. The class definition for the medical monitoring case included:

> All person[s] who have occupied residential properties in the Town of Amherst with private wells within three-fourths mile of the TCI Site, and those properties to the North along and within the area of Boston Post Road on the west, Cross Road through its easternmost intersection with Windsor Drive, and Waterview Drive, and who
>
> [1] were born to mothers who consumed household water containing 20 parts per trillion ("ppt") or higher of the sum of PFOA and PFOS for a cumulative time period of one year or more before that child's birth,
> or
>
> [2] during the period from birth up to their 20th birthday for a cumulative time period of one year or more, consumed household water containing 20 ppt or higher of the sum of PFOA and PFOS and/or were breast fed by mothers who consumed household water containing 20 ppt or higher of the sum of PFOA and PFOS for a cumulative time period of one year or more before that person's birth,
> or
>
> [3] consumed household water containing 70 ppt or higher of the sum of PFOA and PFOS during the period from their 20th birthday and after for a cumulative time period of one year or more.

The class definition for the property interest case included:

2

All person[s] who own residential properties in the Town of Amherst, New Hampshire with private groundwater well within three-fourths mile of the TCI Site, and those properties to the North along and within the area of Boston Post Road on the west, Cross Road through its easternmost intersection with Windsor Drive, and Waterview Drive.

In April 2022, the trial court approved the plaintiffs' proposed deadlines in the consolidated cases, including April 2022 for completion of remaining discovery, May 2022 for challenges to expert testimony, July 2022 for replies to objections to expert testimony and for pretrial motions, witness and exhibit lists, and pretrial statements, and August 2022 for the trial management conference. On April 26, 2022, the trial court issued a Notice of Jury Trial for the consolidated cases, ordering a trial management conference on August 25, jury selection on September 8, and trial beginning on September 12.

On April 25, TCI filed a petition for original jurisdiction in this court from the trial court's 2018 ruling that plaintiffs who allege exposure to PFOA but do not allege a present physical injury can pursue claims for medical monitoring, and from its denial of TCI's motion for an interlocutory appeal. See Sup. Ct. R. 11. In support, TCI explained that we had accepted an interlocutory transfer of certified questions in a separate case from the United States District Court for the District of New Hampshire asking whether New Hampshire recognizes a claim for the costs of medical monitoring as a remedy or as a cause of action in the context of plaintiffs who were tortiously exposed to a toxic substance. Accepting its petition, TCI argued, would "allow this Court to simultaneously answer the significant common questions of law that have arisen in two separate lawsuits pending in both state and federal court." On June 23, we accepted TCI's petition.

In September, one week before the scheduled trial, the parties jointly moved to stay the property interest case because "a determination of liability [in the property interest case] will not necessarily resolve all liability questions in the Medical Monitoring Case." The parties agreed that "for the efficiency of judicial resolution there should be a stay of the [property interest case] until the appeal of the Medical Monitoring Case is concluded." The trial court granted the motion.

On March 21, 2023, in answering the certified questions from the federal court, we determined that New Hampshire does not recognize a claim for the costs of medical monitoring as a remedy or as a cause of action in the context of plaintiffs who were exposed to a toxic substance but have no present physical injury. See Brown v. Saint-Gobain Performance Plastics Corp., 175 N.H. 641, 645 (2023). Based on our decision in Brown, we issued an order reversing the superior court's denial of TCI's motion to dismiss the medical

3

monitoring class action for failure to state a claim, and remanding for further proceedings. Petition of Textiles Coated Incorporated d/b/a Textiles Coated International, No. 2022-0224 (non-precedential order at 1), 2023 WL 2584441 (N.H. Mar. 21, 2023).

Thereafter, TCI filed a motion in the trial court for a final judgment in the medical monitoring case pursuant to Superior Court Rule 46(d)(2), "[b]ecause the only claims . . . are for medical monitoring costs for a class of individuals lacking present physical injuries." The plaintiffs objected, arguing that the basis for TCI's motion for final judgment was "incorrect" as "[t]here has been no factual determination of whether any members of the class do or do not have present physical injuries." Rather, the plaintiffs argued, because their complaint "did not allege present physical injuries as a basis for their claim for medical monitoring costs," the court should grant TCI's original motion to dismiss for failure to state a claim.

The Superior Court (Messer, J.) agreed with the plaintiffs that Rule 46(d) was not applicable, as the rule "calls for final judgment after entry of a verdict or decree, the grant of a motion for nonsuit or directed verdict, or where a motion is acted on after verdict or decree, none of which have occurred here." Recognizing that the "practical effect" of Petition of Textiles "is that a claim for medical monitoring is not recognized in this state where the plaintiffs do not allege a present physical injury," the court determined that "[b]ecause the plaintiffs' complaint does not allege any present physical injuries," the complaint failed to state a claim for which relief may be granted. Accordingly, the court granted TCI's original motion to dismiss, dismissing the medical monitoring case with prejudice as to the class members identified in the plaintiffs' proposed order of dismissal.

TCI then moved for summary judgment in the property interest case, asserting that because a final judgment on the merits had been issued in the medical monitoring case, all of the plaintiffs' claims, including those raised in the property interest case, were barred by res judicata. Following a hearing, the trial court denied the motion, finding that the elements of res judicata had not been met. The court determined that the certified classes defined by the medical monitoring case and the property interest case "are distinct enough that it cannot be fairly said" that the cases involved the same parties. The court also determined that the property interest case "is a distinct cause of action" from the medical monitoring case because the "operative facts for a medical monitoring claim . . . are neither shared by the property damage claim nor are they directly related to any operative facts relevant to prove the claims" in the property interest case. This interlocutory appeal followed.

4

II.    Analysis

On agreement of the parties, the trial court certified the following question presented in the interlocutory appeal statement: "Whether, under the doctrine of res judicata, the final resolution of Plaintiffs' class action lawsuit against TCI seeking medical monitoring damages has a preclusive effect on this lawsuit seeking property damages."

Res judicata is a judicial doctrine that prevents a losing party from obtaining a second review of a claim after having failed to obtain relief in its first attempt.  See Christian Camps & Conferences v. Town of Alton, 118 N.H. 351, 354 (1978).  The doctrine is rooted in a policy that those who have litigated a dispute are bound by the results of the first litigation and that issues that were or could have been resolved in the first case are settled as between the parties.  Id.  Res judicata "rests on considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations."  5 Gordon J. MacDonald, New Hampshire Practice: Wiebusch on New Hampshire Civil Practice and Procedure § 57.20, at 57-15 (4th ed. 2014).

The doctrine applies if three elements are met: (1) the parties in both actions are the same or in privity with one another; (2) the same cause of action was before the court in both instances; and (3) the first action ended with a final judgment on the merits.  Graham v. Eurosim Constr., 175 N.H. 633, 637 (2023).  Whether a claim is barred by res judicata is determined on a case-by-case basis.  Cook v. Sullivan, 149 N.H. 774, 777 (2003).

Res judicata is an affirmative defense.  Super. Ct. R. 9(d)(15).  Thus, the movant, here TCI, bears the burden of proving its application.  Graham, 175 N.H. at 636-37.  TCI argues that it is entitled to summary judgment "because each of the three elements of res judicata is satisfied."  According to TCI, "[a]bandoning the doctrine" of res judicata in this case would result in "the erosion of the principles it protects."  We disagree.

The legal tradition in this state is to "make every effort to reach a judgment on the merits, to achieve the ends of justice unobstructed by imaginary barriers of form."  Roberts v. General Motors Corp., 140 N.H. 723, 729 (1996).  New Hampshire procedure focuses on "what justice require[s]," not on "strict precision in form."  In re Proposed Rules of Civil Procedure, 139 N.H. 512, 515-16 (1995); see Morency v. Plourde, 96 N.H. 344, 346 (1950) ("It is probably no exaggeration to say that in no state is pleading treated more liberally and regarded as less of a game than in this jurisdiction.").

As set forth above: (1) the plaintiffs filed simultaneous suits in the same court on the same day; (2) the two cases were consolidated and proceeded as a unit through discovery and motion practice; (3) class certification for both

5

cases was argued in the same hearing and different classes were determined in a single order; and (4) over the next several years, structuring orders were established in the consolidated cases as the parties prepared them for a single trial.  Thus, for all practical purposes, the issues in the "first litigation" consist of claims involving medical monitoring and property interest.  Our determination in <u>Brown</u> that a claim for the costs of medical monitoring as a remedy or as a cause of action does not exist in this state in the absence of present physical injury did not resolve, and could not have resolved, the property interest claims that had been stayed by agreement of the parties. Under these unique circumstances, the application of res judicata would support neither the public policy favoring the establishment of certainty in legal relations nor considerations of economy of judicial time.

Accordingly, we answer the transferred question in the negative, affirm the denial of TCI's motion for summary judgment as to the property interest claims, and remand for further proceedings consistent with this order.

<u>Affirmed and remanded</u>.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,
Clerk**

6