Hillsborough
No. 79-097

UNION LEADER CORPORATION

v.

JAMES CHANDLER, CLERK OF NEW HAMPSHIRE
HOUSE OF REPRESENTATIVES

June 8, 1979

*Malloy & Sullivan,* of Manchester (*James J. Barry, Jr.,* orally), for the plaintiff.

*Brown & Nixon P.A.,* of Manchester (*Stanley M. Brown* orally), for the defendant.

PER CURIAM. This is a bill in equity in which the plaintiff, Union Leader Corporation, seeks to compel the defendant, clerk of the New Hampshire House of Representatives, to turn over to the plaintiff under RSA ch. 91-A (Right-to-Know Law) a certain tape recording of the proceedings of the house of representatives on Wednesday, April 11, 1979, for the purpose of duplicating and using it for "voice stress analysis." All questions of law were transferred without ruling by *Flynn,* J.

At the opening of the 1979 session of the house of representatives on December 6, 1978, the following action occurred in the house:

> Rep. James White moved that all action taken at all sessions of the House of Representatives be recorded through the public address system on tape, said tapes to be used by the House and the Clerk, within three legislative days, to confirm and correct the Permanent Journal. The Permanent Journal as thus prepared by the Clerk and corrected by the House shall be the official record of the House, and the Committee on the Journal be authorized to examine the Permanent Journal of the last day of the session, as prepared by the Clerk, and make corrections of the same.
> Adopted.

14 December 1978 House Record, at 6.

House sessions are completely open to the public and press. N.H. CONST. pt. I, art. 8, *as amended* (Supp. 1977); RSA 91-A:2 II (Supp. 1977). The *Permanent Journal,* not the tape recordings, is the official record of the "public proceedings" of the house, RSA 91-A:1-a (Supp. 1977), required to be published. N.H. CONST. pt. 2, art. 24; *Opinion of the Justices,* 35 N.H. 579 (1858).

Subsequent to our decision in *1590 Broadcasting Corp. v. Public Utilities Commission,* 113 N.H. 258, 306 A.2d 49 (1973), the "Right-to-

Know Law" was amended (Laws 1975, 383:1), to require that persons attending public proceedings be "permitted to use recording devices including . . . tape recorders" and videotape equipment at such meetings. In response to that legislation, power jacks were installed in the gallery of the house to permit members of the public to use tape recorders, and the audio public address system was extended to the press room so that members of the press might listen and tape record there as well as in the house chamber.

Plaintiff is the publisher of newspapers. Its reporters were entitled to attend the public session of the house of representatives on April 11, 1979, when house bill 155, proposing that public utilities' rates be based on current levels of service (the so-called anti-CWIP bill), was debated and adopted by roll call vote after extensive debate. 16 April 1979 House Record, at 1346–48. Plaintiff reported the debate in full in its newspapers.

Subsequently on April 13, plaintiff's reporter Donn Tibbetts hand-delivered a letter to the office of the Speaker requesting permission to *listen* to the tape recording made for the purpose of the house, stating that his editor intended to subject it to voice stress analysis. The Speaker granted permission to *listen* to the tape or to procure partial or complete typed transcriptions and he denied permission to remove the tape from the possession of the house for voice stress analysis. On April 16, another written request for the tape was delivered by hand to counsel for the Speaker.

On April 17, the Speaker reported the situation to the house, explained the basis for his ruling, and announced that if there were no dissent, that ruling would stand. There was no dissent, and on motion, adopted unanimously, the Speaker's ruling was ordered to be printed in the *Journal* as follows:

> The policy regarding the access to recording tapes is that we have always granted any member of the House or the public the right to listen to the recording tapes, and to bring a stenographer with them, if they wish to make partial or complete written transcription. But we have never duplicated recording tapes for anyone, nor is it permitted for those recording tapes to leave the State House until they are secured in the State Library for the purposes of the historic record for the proceedings of this House.
>
> . . . Therefore, unless otherwise ordered by this House, my ruling will be to continue [sic] that the tapes will remain in the possession of the Clerk's office, under the control of the House Clerk, and that anyone, upon request, may have

access to the tapes for the purpose of physically listening to them or making a partial written transcript or full transcript, under proper supervision. But the recording tapes are not available for duplication or subjection to so-called "stress tests" by the Manchester Union Leader or anyone else.

19 April 1979 House Record, at 1478–79.

We do not view this case as a true Right-to-Know Law case under RSA ch. 91-A, because the April 13, 1979 session was open to the public and press, an official journal was prepared of the proceedings, and written transcripts are available if the plaintiff or anyone else wishes to obtain them. *See* N.H. CONST. pt. I, art. 8; N.H. CONST. pt. II, art. 24; *Bezio v. Neville*, 113 N.H. 278, 280, 305 A.2d 665, 667 (1973). The house of representatives, as a separate and coequal branch of government, is constitutionally authorized to promulgate its own rules. N.H. CONST. pt. I, art. 37; N.H. CONST. pt. II, art. 22; *see Opinion of the Justices*, 63 N.H. 625 (1885). The house could properly decide, consistent with the right of reasonable public access required by N.H. CONST. pt. I, art. 8, that its official tape should not be duplicated or subjected to a so-called voice stress analysis.

Accordingly, the order is

*Bill dismissed.*