Request of the Senate
No. 96-280

## OPINION OF THE JUSTICES
## (Prior Sexual Assault Evidence)
January 24, 1997

The following request of the senate for an opinion of the justices was adopted on April 18, 1996, and filed with the supreme court on April 26, 1996:

"Whereas, there is pending in the senate, HB 1549, 'An act relative to the admissibility of a prior sexual assault into evidence in certain prosecutions' as amended by the house; and

"Whereas, the senate has adopted an amendment to HB 1549 (document #5798L); and

"Whereas, RSA 632-A:6 as proposed by HB 1549, as amended, would, in criminal prosecutions for offenses set forth in RSA 632-A, for incest and endangering the welfare of a child or incompetent in violation of RSA 639, and for attempts and conspiracies to commit those crimes, and in civil suits for sexual assault, establish a rebuttable presumption that evidence of any other sexual assault committed by the defendant is admissible and may be considered for any relevant purpose other than showing the defendant's character; and

"Whereas, RSA 632-A:6 as proposed by HB 1549, as amended, would, in cases where there is evidence of other sexual assaults by the defendant against the same victim, establish a rebuttable presumption that such evidence is admissible to show the defendant's motive or intent, the [context] of the assault in question, and the relationship of the parties; and

"Whereas, RSA 632-A:6 as proposed by HB 1549, as amended, would, in cases where there is evidence of other sexual assaults by

the defendant against different victims, establish a rebuttable presumption that such evidence is admissible to show the defendant's motive and intent; and

"Whereas, RSA 632-A:6 as proposed by HB 1549 as amended would prohibit the exclusion of the evidence unless the trial court finds that the probative value of such evidence is substantially outweighed by the danger of unfair prejudice to the defendant; and

"Whereas, doubt has arisen as to the constitutionality of the provisions of said bill as amended; and

"Whereas, it is important that the question of the constitutionality of said provisions should be settled in advance of its enactment; now, therefore, be it

"Resolved by the Senate;

"That the Justices of the Supreme Court be respectfully requested to give their opinion on the following questions of law:

1. Would enactment of HB 1549, as amended, result in encroachment by the legislative branch of the state government upon the constitutional function of the judicial branch in violation of Part I, Article 37 of the New Hampshire Constitution?

2. Would enactment of HB 1549, as amended, violate Part 2, Article 73-a of the New Hampshire Constitution which gives the chief justice of the supreme court the authority to make rules governing the practice and procedure to be followed in all courts?

3. Would any other provision of the New Hampshire Constitution be violated by the enactment of HB 1549, as amended?

"That the clerk of the senate transmit copies of this resolution and HB 1549, as amended, to the Justices of the New Hampshire Supreme Court."

On June 5, 1996, this court received an amended request from the senate substituting different questions of law. The following resolution SR 6, as amended, requesting an opinion of the justices, was adopted by the senate on May 31, 1996, and filed with the supreme court on June 5, 1996:

"Whereas, the senate, on April 18, 1996, adopted Senate Resolution 3 requesting an opinion of the justices concerning the constitutionality of HB 1549 and, having reconsidered the questions of law posed in that resolution, has found it advisable to substitute different questions of law; and

"Whereas, there is pending in the senate, HB 1549, 'An Act relative to the admissibility of a prior sexual assault into evidence in certain prosecutions' as amended by the house; and

"Whereas, the senate has adopted an amendment to HB 1549 (document #5798L); and

"Whereas, RSA 632-A:6 as proposed by HB 1549, as amended, would, in criminal prosecutions for offenses set forth in RSA 632-A, for incest and endangering the welfare of a child or incompetent in violation of RSA 639, and for attempts and conspiracies to commit those crimes, and in civil suits for sexual assault, establish a rebuttable presumption that evidence of any other sexual assault committed by the defendant is admissible and may be considered for any relevant purpose other than showing the defendant's character; and

"Whereas, RSA 632-A:6 as proposed by HB 1549, as amended, would, in cases where there is evidence of other sexual assaults by the defendant against the same victim, establish a rebuttable presumption that such evidence is admissible to show the defendant's motive or intent, the context of the assault in question, and the relationship of the parties; and

"Whereas, RSA 632-A:6 as proposed by HB 1549, as amended, would, in cases where there is evidence of other sexual assaults by the defendant against different victims, establish a rebuttable presumption that such evidence is admissible to show the defendant's motive and intent; and

"Whereas, RSA 632-A:6 as proposed by HB 1549 as amended would prohibit the exclusion of the evidence unless the trial court finds that the probative value of such evidence is substantially outweighed by the danger of unfair prejudice to the defendant; and

"Whereas, numerous statutes already in effect address the admissibility of various types of evidence in judicial proceedings; now, therefore, be it

"Resolved by the Senate;

"That the questions of law submitted in Senate Resolution 3 adopted by the senate April 18, 1996, be withdrawn from the Justices of the Supreme Court; and

"That the Justices of the Supreme Court be respectfully requested to give their opinion on the following questions of law;

1. Would enactment of HB 1549, as amended, violate Part I, Article 37 of the New Hampshire Constitution?

2. Would enactment of HB 1549, as amended, violate Part II, Article 73-a of the New Hampshire Constitution?

"That the clerk of the senate transmit copies of this resolution and HB 1549, as amended, to the Justices of the New Hampshire Supreme Court."

The following response is respectfully returned:

*To the Honorable Senate*:

The undersigned justices of the supreme court now submit the following reply to your amended opinion request of May 31, 1996. Following our receipt of your initial resolution, we invited interested parties to file memoranda with the court on or before June 17, 1996. That deadline was extended to June 28, 1996, following our receipt of your amended resolution.

HB 1549 (the bill), as amended, proposes to amend RSA chapter 632-A (1996 & Supp. 1996) by inserting after paragraph IV in section 6 a new paragraph to read:

> V.(a) In criminal prosecutions for offenses set forth in RSA 632-A, for incest and endangering the welfare of a child or incompetent in violation of RSA 639, and for attempts and conspiracies to commit those crimes, and in civil suits for sexual assault, there shall be a rebuttable presumption that evidence of any other sexual assault committed by the defendant is admissible and may be considered for any relevant purpose other than showing the defendant's character. In cases where there is evidence of other sexual assaults by the defendant against the same victim, there shall be a rebuttable presumption that such evidence is admissible to show the defendant's. motive, intent, the context of the assault in question, and the relationship of the parties. In cases where there is evidence of other sexual assaults by the defendant against different victims, there shall be [a] rebuttable presumption that such evidence is admissible to show the defendant's motive and intent. The evidence shall not be excluded unless the trial court finds that the probative value of such evidence is substantially outweighed by the danger of unfair prejudice to the defendant.
>
> (b) As used in subparagraph (a), the term "motive" includes a desire to engage in sexual activity with a certain victim or type of victim, or a desire to control or harm others through sexual assault.
>
> (c) The purposes for which evidence of other sexual assaults may be admitted are not limited to those identified in subparagraph (a). Such evidence continues to be admissible for any relevant purpose except character. The fact that it may also be relevant to character does not render it inadmissible if it is relevant for some other purpose.

The bill has a statement of purpose which reads as follows:

I. The public has a strong interest in assuring that persons who commit violent sexual assaults, like those who commit other crimes, are brought to justice. However, sexual assaults present unique problems of proof. They are often committed in the absence of eyewitnesses, and there is little or no corroborating physical evidence, particularly if the victim delays reporting of the assault. The prosecution frequently rests exclusively on the victim's testimony, and the jury's decision is dependent on its assessment of the relative credibility of the victim and the defendant. The victims are often children whose credibility readily can be attacked in the absence of substantial corroboration. Additionally, unlike other criminal offenses, the alleged consent of the victim is frequently at issue in sexual assault prosecutions.

II. Sexual assaults are also unique in that they are frequently not isolated events, but are part of a pattern of sexual assaults by the assailant against the same or other victims. Offenders frequently target and assault multiple victims. In cases in which an assailant has committed repeated sexual assaults against the same victim, an individual assault is often integrally related to the others and cannot fully or fairly be understood by a jury outside of the context in which it occurred. In such cases, the fact that the victim has been subjected to other assaults by the defendant may explain, for example, the victim's reaction to the assault in question, including his or her failure to resist the assault or to delay in reporting it. In cases in which a defendant is alleged to have sexually assaulted a child, evidence that he or she has sexually assaulted other children is generally probative to show a motive to commit the assault in question, since the defendant is attracted to children. In cases in which an assailant has committed sexual assaults against different adult victims, evidence of the other assaults is often generally probative of a motive to commit the assault at issue.

III. Given the egregious nature of the crime of sexual assault and the peculiarities attendant to its proof, there is a compelling public interest in admitting all relevant evidence that will illumine the credibility of the alleged victim, while assuring a fair trial for the defendant. In most prosecutions or civil suits arising from sexual assaults, evidence of other sexual assaults committed by the defen-

dant is highly relevant. Therefore, its admission will advance the truth-seeking function of the trial. By strengthening the legal system's tools for bringing the perpetrators of these crimes to justice, this reform will better protect the public from crimes of sexual violence.

A legislative declaration of purpose is ordinarily accepted as a part of the act. *Opinion of the Justices*, 88 N.H. 484, 490, 190 A. 425, 429 (1937).

Your first question asks whether enactment of the bill would "violate Part I, Article 37 of the New Hampshire Constitution." We answer in the affirmative.

Part I, article 37 of our State Constitution provides:

> In the government of this state, the three essential powers thereof, to wit, the legislative, executive, and judicial, ought to be kept as separate from, and independent of, each other, as the nature of a free government will admit, or as is consistent with that chain of connection that binds the whole fabric of the constitution in one indissoluble bond of union and amity.

Beginning with volume one of the NEW HAMPSHIRE REPORTS, this court undertook its duty of defining the scope of the separation of powers clause as between the legislative and judicial branches of government. *See Merrill v. Sherburne & al.*, 1 N.H. 199 (1818). In *Merrill*, we reviewed the pertinent articles of our State Constitution and concluded that nothing therein mandated a conclusion other than that the general court is excluded from the exercise of "judicial powers." *Id.* at 206-08. The question before us today is whether the legislature's promulgation of the proposed statute falls within the exercise of "judicial powers." *See id.* at 208.

■ Separation of powers is an integral part of our governmental system of checks and balances: each branch of government acts as a check on the other, protecting the sovereignty and freedom of those governed by preventing the tyranny of any one branch of the government being supreme. *See Opinion of the Justices*, 110 N.H. 359, 362, 266 A.2d 823, 825-26 (1970). The separation of powers doctrine complements the notion of checks and balances by institutionalizing a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of another. *Cf. Attorney-General v. Morin*, 93 N.H. 40, 46, 35 A.2d 513, 516 (1943) (referring to purpose of article 37 in the minds of its framers as to protect executive and judicial branches of State government from legislative encroachment rather than to circumscribe within strict

limits the functions of the court). Despite the explicit constitutional language concerning the separation of powers in our State, we have always recognized that the doctrine does not require an absolute division of powers, but a cooperative accommodation among the three branches of government. *See Opinion of the Justices,* 121 N.H. 552, 556, 431 A.2d 783, 785-86 (1981) (some overlapping of power of each branch must exist); *Opinion of the Justices,* 113 N.H. 287, 290, 306 A.2d 55, 57 (1973) (article 37 does not require the erection of impenetrable barriers between the branches of government); *Cloutier v. State Milk Control Board,* 92 N.H. 199, 203, 28 A.2d 554, 557 (1942) (State Constitution contemplates some overlapping and duality as a matter of practice and essential expediency). However, if the legislature could overrule the courts in some of their essential operations, the judiciary "instead of being one of the three coordinate branches of the state government, would [be] rendered subservient to the Legislature in a fashion never contemplated by any." *Winberry v. Salisbury,* 74 A.2d 406, 410 (N.J.), *cert. denied,* 340 U.S. 877 (1950). "[T]he judiciary would in every respect cease to be a check on the legislature, if the legislature could at pleasure revise or alter any of the judgments of the judiciary." *Merrill,* 1 N.H. at 210. Because the purpose of the system of checks and balances is to prevent one branch of government from dominating another, evaluation of whether the separation of powers principle would be violated requires us to consider whether the proposed legislation would prevent the judiciary from accomplishing its constitutionally assigned functions. *See Opinion of the Justices,* 113 N.H. at 290, 306 A.2d at 57 ("[T]he three departments must move in concert without improper encroachments by one branch upon the functions of another."); *cf. State v. LaFrance,* 124 N.H. 171, 176, 471 A.2d 340, 342 (1983) ("No branch of State government can lawfully perform any act which violates the State Constitution.").

The bill, as amended, would affect the function of New Hampshire Rule of Evidence 404(b), a rule adopted by this court to "govern proceedings in the courts of the State of New Hampshire." N.H. R. EV. 101. Rule 404(b) provides the standard for admission of evidence of crimes, wrongs or acts, other than those crimes, wrongs or acts charged, in the trial of matters in the courts of this State.

■ This court has consistently recognized that "[a]s a separate and coequal branch of government, the judiciary is constitutionally authorized to promulgate its own rules." *Petition of Burling,* 139 N.H. 266, 271, 651 A.2d 940, 943 (1994); *see* N.H. CONST. pt. I, art. 37; N.H. CONST. pt. II, art. 73-a; *In re Proposed Rules of Civil*

*Procedure*, 139 N.H. 512, 513, 659 A.2d 420, 420 (1995) (supreme court's supervisory and rulemaking authority over courts in State derives primarily from State Constitution and from common law); *LaFrance*, 124 N.H. at 180, 471 A.2d at 345 (court's authority to adopt rules of practice and procedure is of ancient origin); *Nassif Realty Corp. v. National Fire Ins. Co.*, 107 N.H. 267, 268, 220 A.2d 748, 749 (1966) (rulemaking power of supreme court as court of general jurisdiction is broad and comprehensive).

> The inherent rule-making authority of courts of general jurisdiction in this state to prescribe rules of practice and rules to regulate their proceedings "as justice may require" has an ancient lineage supported by consistent custom, recognized by statute and enforced by numerous judicial precedents. The matter has been succinctly summarized by a careful legal historian in the following language: Thus the rule-making power was firmly established over three hundred years ago. A statute in 1701 confirmed the ancient power which has never been lost.

*Garabedian v. William Company*, 106 N.H. 156, 157, 207 A.2d 425, 426 (1965) (quotation and citations omitted). Our judicial power has always included the power to prescribe procedural rules for the conduct of litigation in this State's courts. In addition, this court's inherent power to promulgate procedural rules has been endorsed with constitutional authority. *See* N.H. CONST. pt. II, art. 73-a.

> [T]he rule-making process is an inherent judicial power existing independently of legislative authority. In addition, part II, article 73-a of the New Hampshire Constitution, which granted to the supreme court the power to make rules regulating the administration of all courts of the State, makes clear that the judiciary has the authority to promulgate and administer rules concerning practice and procedure in the courtroom.

*LaFrance*, 124 N.H. at 180, 471 A.2d at 345.

██ Rules of evidence, in most instances, relate only to practice and procedure. To say, however, that a rule exists and that conflicting legislation would violate the separation of powers doctrine is not a sufficient analysis. Under the separation of powers doctrine, the legislature has a limited appropriate role to act on court rules; the basic analysis applied to determine whether legislative action is appropriate on judicial rules involves the distinction between substance and procedure. *See State v. Currington*, 700 P.2d

942, 944 (Idaho 1985) (procedure pertains to "essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated"); *State ex rel. Collins v. Seidel*, 691 P.2d 678, 681 (Ariz. 1984); *Ammerman v. Hubbard Broadcasting, Inc.*, 551 P.2d 1354, 1357 (N.M. 1976) (rules of evidence "designed to accomplish a just determination of rights and duties granted and imposed by the substantive law are traditionally considered to be . . . procedural law"); *see generally* 1 WIGMORE ON EVIDENCE § 7, at 462-65 n.1 (1983); Morgan, *Rules of Evidence — Substantive or Procedural?*, 10 VAND. L. REV. 467 (1957). However, the distinction between procedure, a subject under the exclusive jurisdiction of the courts, and substance, a legitimate subject of legislative action, "is not always well understood, and is sometimes vague and indistinct." *State v. Pavelich*, 279 P. 1102, 1104 (Wash. 1929); *see In re Florida Evidence Code*, 372 So. 2d 1369 (Fla. 1979).

A variety of tests have evolved as methods of classifying something as substance or procedure. One test, derived from the United States Supreme Court's decision in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny, "looks to whether a person's in-court conduct or out-of-court conduct has been changed." Comment, *Rules of Evidence: An Exercise of Constitutional Power by the Michigan Supreme Court*, IV DET. C.L. REV. 1063, 1080 (1980) [hereinafter *Rules of Evidence*]. "The rule is substantive if the rule affects or regulates primary, out-of-court activities of people as a direct result of promoting social policies which the state deems important." *Id.*

A second test "asks whether there exists a general public policy concerning a particular issue." *Id.* at 1081. "The test . . . is whether a given rule of evidence is a device with which to promote the adequate, simple, prompt and inexpensive administration of justice in the conduct of a trial or whether the rule, having nothing to do with procedure, is grounded upon a declaration of a general public policy." Riedl, *To What Extent May Courts Under the Rule-Making Power Prescribe Rules of Evidence?*, 26 A.B.A.J. 601, 604 (1940). This test, however, has been criticized.

> Clearly, matters of public policy enacted as laws by the legislature involving *substantive rights* as distinguished from matters of *procedure* will always be controlling, subject to constitutional restraints. However, it is not sufficient to say simply that we will defer to legislative enactment on all "matters of public policy"; in fact, all enactments of the General Assembly become matters of "public policy."

> Therefore, even though a particular legislative enactment, procedural in nature, may serve to enhance or advance an acknowledged public policy issue, if the legislatively enacted procedure conflicts with a procedure established by the judicial branch, then in *all* such cases the judicially established procedure should prevail unless and until it is changed or modified by the judicial branch.

*State v. Sypult*, 800 S.W.2d 402, 407 (Ark. 1990) (Turner, J., concurring).

■ A third test, characterized as "the most popular test to distinguish substance and procedure," defines "the rights and duties which people live by as substantive, whereas procedure defines the method by which those rights are enforced." *Rules of Evidence, supra* at 1082.

> A definition which distinguishes substantive from procedural law on the basis that the former relates to rights and duties, while the latter refers to the means and methods by which those rights and duties are to be protected and enforced through the courts would appear to be both a liberal and practical criterion, and one which lends to a conclusion that rules of evidence are included within "procedure."

Stein, *To What Extent May Courts Under the Rule-Making Power Prescribe Rules of Evidence?*, 26 A.B.A.J. 639, 644 (1940). We accept this test as providing the most useful framework for distinguishing between substance and procedure. Substantive laws are "those laws which have for their purpose to determine the rights and duties of the individual and to regulate his conduct and relation with the government and other individuals." Riedl, *supra* at 605 n.31. Procedural laws are "those laws which have for their purpose . . . to prescribe machinery and methods to be employed in enforcing these positive provisions." Riedl, *supra* at 605 n.31. "[T]here is a critical difference between the rights of an individual and the *method* by which an individual's right will be presented in a court of law." *Rules of Evidence, supra* at 1078.

■ The location of a matter of substance within a scheme of rules of procedure or rules of evidence does not immunize it from legislative change. For example, where the legislature purports to create presumptions that govern the admission and weight of evidence, and these presumptions are integral to the definition of the crime or cause of action to be tried, the governing presumptions

fairly may be considered substantive, and therefore constitutionally appropriate for legislative action. *See* RSA 259:18, I (1993) (rebuttable presumption that person selling five or more vehicles in twelve-month period is "dealer" for bond requirement purposes); RSA 265:60 (1993) (*prima facie* lawful or unlawful speed for operating motor vehicles); RSA 281-A:17 (Supp. 1996) (rebuttable presumption that heart or lung disease in firefighter is occupationally related for workers' compensation purposes); RSA 292-B:6 (1987) (rebuttable presumption that appropriation of more than seven per cent of market value of assets from appreciation to operating funds is imprudence of governing board of eleemosynary institution); RSA 357-D:3, VII(a) (1995) (presumption that three attempts to repair a motor vehicle problem within warranty period is "reasonable" number triggering replacement or rescission remedies).

■ The legislature also may affect procedure, even when there is no tie to matters of substance, when it acts within its expressly delegated constitutional powers to create and allocate jurisdiction within, and among, the courts. *See* N.H. CONST. pt. II, art. 4 (power to establish courts); N.H. CONST. pt. II, art. 72-a; N.H. CONST. pt. II, art. 76 (allocation of jurisdiction on marriage, divorce, alimony, and appeals from probate judges); N.H. CONST. pt. II, art. 77 (allocation of jurisdiction to justices of the peace and to police courts); N.H. CONST. pt. II, art. 80 (legislative control over manner of exercise of jurisdiction by probate court in some matters); N.H. CONST. pt. I, art. 20 (legislative power to deny jury trial in admiralty). The legislature has regularly exercised these constitutional powers. *See* RSA 491:8-a (1983) (creation of summary judgment jurisdiction in superior court); RSA 502-A:27-c (1983) (district court); RSA 547:11-f (1996) (probate court); RSA 491:22 (Supp. 1996) (creation of declaratory judgment jurisdiction in the superior court); RSA 547:11-b (Supp. 1996) (creation of declaratory judgment jurisdiction in probate court); RSA 491:22-a (1983) (allocation of burden of proof in some instances under created jurisdiction).

■ The legislature has acted in some instances where, it could be argued, it has gone beyond its legislative function and crossed into areas that remain the exclusive domain of the judiciary. *See* RSA 382-A:2-202 (1994) (limitation of parol evidence); RSA 356:4-e (1995) (application of preclusive effect in anti-trust proceedings); RSA 632-A:6, III-a (Supp. 1996) (manner of dress of victim inadmissible to show consent). Although these enactments arguably may interfere with the judiciary's authority over procedural matters, we may apply them as a matter of comity when they are consistent with

judicial functions and policies and when no constitutional challenge is made to them. *See Petition of Breau,* 132 N.H. 351, 359, 565 A.2d 1044, 1049 (1989) ("obligation of comity is consistent with judicial discretion to decline any recognition of foreign governmental acts that would violate strong public policy of this State or leave its courts unable to render complete justice"); *cf. Opinion of the Justices (Certain Evidence in Sexual Assault Cases),* 140 N.H. 22, 26-27, 662 A.2d 294, 296-97 (1995) (declining to opine on constitutionality of evidence rule under doctrine of separation of powers where question not raised in request); *State v. Howard,* 121 N.H. 53, 58-59, 426 A.2d 457, 460-61 (1981) (statute construed in such a way as to not violate constitution).

 The proposed bill brings New Hampshire Rule of Evidence 404(b) directly into issue. It does not purport to define the crimes or torts to which it is addressed but seeks to control the use of collateral matters in the fair trial of those crimes or torts. Rule 404(b) is a prime example of an internal procedural rule designed to effectuate a constitutional right. The purpose of Rule 404(b) is to increase the probability of a just verdict. *See State v. Cote,* 108 N.H. 290, 297, 235 A.2d 111, 116 (1967), *cert. denied,* 390 U.S. 1025 (1968) (use of prior convictions to show nothing more than a disposition to commit the crime charged would violate due process). A just verdict is a result of a fair trial, the right to which is a substantive right grounded in our constitution, not in statutory enactments. The protection of constitutional rights is a core function of the judiciary. *See Dartmouth College v. Woodward,* 17 U.S. (4 Wheat.) 518, 625 (1819) (on the court is "imposed the high and solemn duty of protecting" those rights which the constitution has placed beyond legislative control). Rule 404(b) is simply a procedural means by which the fair trial right is secured. Giving deference to the legislature would, in this instance, abolish the rule's purpose and interfere with the judiciary's sound discretion in determining to what extent the rule serves its function in the circumstances of a particular case.

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"As we have long held and continue to maintain, evidence of prior wrongs is inadmissible to prove a disposition to commit such acts."

*State v. Trempe*, 140 N.H. 95, 99, 663 A.2d 620, 622 (1995). "The purpose of Rule 404(b) in a criminal trial is to ensure that the defendant is tried on the merits of the crime as charged and to prevent a conviction based on evidence of other crimes or wrongs." *State v. Bassett*, 139 N.H. 493, 496, 659 A.2d 891, 894 (1995). "Evidence of other wrongs is inherently prejudicial, and increases the likelihood that a jury will decide the case on an improper basis. The concern that a defendant might be convicted because of his character is the gravamen of Rule 404(b)." *State v. McGlew*, 139 N.H. 505, 509, 658 A.2d 1191, 1195 (1995) (citation omitted).

Rule 404(b) directly incorporates principles developed by the common law.

> Over one hundred years ago, this court stated an evidentiary rule that was well-settled even then: evidence of a defendant's prior bad acts is not permitted to show in a prisoner a tendency or disposition to commit the crime with which he or she is charged. This principle has not lost any strength in the succeeding years and forms the foundation for our present Rule 404(b).

*State v. Blackey*, 137 N.H. 91, 96, 623 A.2d 1331, 1334 (1993) (quotations, brackets, and citation omitted). Prior to the adoption of Rule 404(b), this court followed a set of principles designed to ensure the proper use of other crimes evidence.

> Evidence of prior crimes, while inadmissible to prove the defendant's bad character or disposition to commit the crime for which he is indicted, may be offered to prove an element of the crime or to show, *inter alia*, the defendant's motive, intent or knowledge. In resolving the question of admissibility, the judge must determine that the evidence is relevant for a purpose other than showing the character or disposition of the defendant, that the proof that the acts in question were committed by the defendant is clear, and that the probative value of the evidence outweighs the danger of prejudice to the defendant.

*State v. Hood*, 127 N.H. 478, 480, 503 A.2d 781, 783 (1985) (citations, quotation, and brackets omitted); *see State v. Barker*, 117 N.H. 543, 546, 374 A.2d 1179, 1180 (1977). A similar three-pronged test is applied to cases decided under Rule 404(b). *See State v. Trainor*, 130 N.H. 371, 375, 540 A.2d 1236, 1239 (1988); N.H. R. Ev. 403. Rule 404(b) applies equally to cases involving sexual assaults and other crimes. *Compare State v. Kirsch*, 139 N.H. 647, 653, 662 A.2d 937, 942 (1995) (sexual assault) *with State v. Newcomb*, 140 N.H. 72, 74,

663 A.2d 613, 615 (1995) (murder) *and State v. Richardson*, 138 N.H. 162, 165, 635 A.2d 1361, 1364 (1993) (simple assault, theft, criminal threatening).

Before admitting prior crimes evidence, the trial court must determine its relevance. *Richardson*, 138 N.H. at 166, 635 A.2d at 1364. The rules of evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.H. R. EV. 401. An initial determination of relevance rests within the sound discretion of the trial court. *See* N.H. R. EV. 104(a) (preliminary questions concerning the admissibility of evidence shall be determined by the court). "To meet the relevancy requirement, the other bad acts evidence must have some direct bearing on an issue actually in dispute, and there must be a clear connection between the particular evidentiary purpose, as articulated to the trial court, and the other bad acts." *Kirsch*, 139 N.H. at 654, 662 A.2d at 942 (quotations, citation, and brackets omitted). "The party offering evidence bears the burden to make an offer of proof to show the relevance of the evidence offered." *McGlew*, 139 N.H. at 509, 658 A.2d at 1195.

The proposed bill differs in significant respects from Rule 404(b). The bill establishes a rebuttable presumption in criminal prosecutions for sexual assault and related offenses as defined in RSA chapter 632-A, for incest and endangering the welfare of a child or incompetent, for attempts and conspiracies to commit those crimes, and in civil suits for sexual assault, that certain evidence is admissible. The bill sets out three categories of presumptively admissible evidence in the enumerated civil and criminal sexual assault cases. First, evidence of any other sexual assault committed by the defendant is admissible and may be considered for any relevant purpose other than showing the defendant's character. Second, evidence of other sexual assaults by the defendant against the same victim is admissible to show the defendant's motive, intent, the context of the assault in question, and the relationship of the parties. Third, evidence of other sexual assaults by the defendant against different victims is admissible to show the defendant's motive and intent.

The proposed legislation would restrict the trial court's exercise of discretion in making an initial determination that the offered evidence is relevant. The proposed bill creates a rebuttable presumption that mandates that the offered evidence "shall" be admissible, thereby leaving to the trial court only the determination

whether "the probative value of such evidence is substantially outweighed by the danger of unfair prejudice to the defendant." Also, by creating a rebuttable presumption, the bill would place the burden of going forward, in all instances, on the defendant to disprove the relevancy of the offered evidence. We have often held, in both criminal and civil cases, that the proponent of evidence has the burden of demonstrating its admissibility. *See, e.g., State v. Chaisson,* 123 N.H. 17, 29, 458 A.2d 95, 102 (1983); *Winslow v. Dietlin,* 100 N.H. 147, 149, 121 A.2d 573, 575 (1956); *Panagoulis v. Company,* 95 N.H. 524, 525, 68 A.2d 672, 673 (1949).

■ Prior sexual assault conduct may or may not be relevant, and the question whether it is relevant cannot be reduced to a legislative formula. To do so eliminates the inherent discretion of the judiciary as exercised on a case-by-case basis. *Cf. State v. Clemente,* 353 A.2d 723, 731 (Conn. 1974) (statute requiring production of prior statements of witnesses unduly infringes upon the court by prohibiting its exercise of discretion and inherent power to control discovery).

Rule 404(b) goes to the heart of the judicial function; it strikes a balance between the search for evidence that furthers the truth-finding process and the accused's right to due process. *See State v. Skidmore,* 138 N.H. 201, 202, 636 A.2d 64, 65 (1993); *Cote,* 108 N.H. at 297, 235 A.2d at 116. Due process is a substantive right grounded in the constitution, and Rule 404(b) is a method by which the right is enforced. *See Skidmore,* 138 N.H. at 202, 636 A.2d at 65. The constitution vests this court with the responsibility of maintaining and refining this balance.

> "Powers judicial," "judiciary powers," and "judicatories" are all phrases used in the constitution: and though not particularly defined, are still so used to designate with clearness, that department of government, which it was intended should interpret and administer the laws. On general principles therefore, those enquiries, deliberations, orders and decrees, which are peculiar to such a depart-ment, must in their nature be judicial acts. Nor can they be both judicial and legislative; because a marked difference exists between the employments of judicial and legislative tribunals.

*Merrill,* 1 N.H. at 203-04. A court's constitutional function to independently decide controversies is impaired if it must depend on, or is limited by, another branch of government in determining and evaluating the facts of the controversies it must adjudicate. *See United States v. Klein,* 80 U.S. (13 Wall.) 128, 146 (1871). In essence

the bill before us usurps the judicial function of making relevancy determinations by creating a rebuttable presumption in favor of admissibility without regard for the particular facts or circumstances of a case.

■ Because the proposed bill directly conflicts with Rule 404(b), a rule concerning a uniquely judicial function, the separation of powers doctrine is violated. The legislature has no more right to break down the rules prescribed by this court to assure fundamental due process in criminal and civil trials than the court has to prescribe the mode and manner in which the legislature shall perform its legislative duties. *See Epstein v. State*, 128 N.E. 353, 353 (Ind. 1920); *Opinion of the Justices*, 86 N.H. 597, 601, 166 A.2d 640, 646 (1933) (part II, article 4, the power of the general court *to* establish courts, does not authorize the legislature to take from the judicial department a power recognized as an essential attribute of judicial tribunals).

We answer your first question, whether enactment of the bill, as amended, would violate part I, article 37 of the State Constitution, in the affirmative. We find it unnecessary, therefore, to address your second question, whether the bill would violate part II, article 73-a of the State Constitution.

David A. Brock

William R. Johnson

W. Stephen Thayer, III

Sherman D. Horton, Jr.

John T. Broderick, Jr.

January 24, 1997

*Jeffrey R. Howard*, attorney general (*Cynthia L. White*, assistant attorney general, on the memorandum), filed a memorandum in support of negative answers to the questions presented.

*James E. Duggan*, chief appellate defender, of Concord, filed a memorandum in support of affirmative answers to the questions presented.

*Douglas & Douglas*, of Concord (*Charles G. Douglas, III* on the memorandum), filed a memorandum on behalf of the New Hampshire House Committee on Corrections and Criminal Justice in support of negative answers to the questions presented.

*Charles R. Johnson*, of Claremont, filed a memorandum in support of negative answers to the questions presented.

*Hank Amsden*, of Concord, filed a memorandum in support of a negative answer to question two.